UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

**CHAMBERS OF**
**CHARLES D. AUSTIN**
**UNITED STATES MAGISTRATE JUDGE**

**101 WEST LOMBARD STREET**
**BALTIMORE, MARYLAND 21201**
**(410) 962-7810**
**MDD_CDAChambers@mdd.uscourts.gov**

March 13, 2024

LETTER TO ALL COUNSEL OF RECORD

Re: *Rodney M. v. Kilolo Kijakazi, Acting Commissioner, Social Security Administration*
Civil No. 23-0947-CDA

Dear Counsel:

On April 8, 2023, Plaintiff Rodney M. ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA's" or "Commissioner's" or "Defendant's") final decision to deny Plaintiff's claim for Social Security benefits. ECF 1. This case was then referred to me with the parties' consent. *See* 28 U.S.C. § 636; Loc. R. 301 (D. Md. 2023). I have considered the record in this case (ECF 8) and the parties' briefs (ECFs 11 & 13). I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). This Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will AFFIRM the Commissioner's decision. This letter explains why.

## I. PROCEDURAL BACKGROUND

Plaintiff filed a Title II application for Disability Insurance Benefits ("DIB") and a Title XVI application for Supplemental Security Income ("SSI") benefits on February 27, 2018, alleging a disability onset of October 12, 2017. Tr. 94–98. Plaintiff's claims were denied initially and on reconsideration. Tr. 93–128. On February 3, 2020, an Administrative Law Judge ("ALJ") held a hearing. Tr. 44. Following the hearing, on April 9, 2020, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act[1] during the relevant time frame. Tr. 18. The Appeals Council denied Plaintiff's request for review, Tr. 5, so the ALJ's decision constitutes the final, reviewable decision of the SSA, *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000); *see also* 20 C.F.R. § 422.210(a).

## II. THE ALJ'S DECISION

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The ALJ is required to evaluate a claimant's disability determination

---

[1] 42 U.S.C. §§ 301 et seq.

using a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920. "Under this process, an ALJ evaluates, in sequence, whether the claimant: '(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to [their] past relevant work; and (5) if not, could perform any other work in the national economy.'" *Kiser v. Saul*, 821 F. App'x 211, 212 (4th Cir. 2020) (citation omitted) (quoting *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)).

Here, at step one, the ALJ determined that Plaintiff "ha[d] not engaged in substantial gainful activity since October 12, 2017 . . . ." Tr. 23. At step two, the ALJ found that Plaintiff suffered from the severe impairments of "degenerative disc disease (DDD) of the cervical spine; lumbar radiculopathy; and obesity . . . ." Tr. 23. The ALJ also determined that Plaintiff suffered from the non-severe impairments of "eczema/skin irritation, sigmoid diverticulosis, fatty liver, mild spondylotic changes to the lumbar spine, and bilateral Meibomian gland dysfunction . . . ." Tr. 24. At step three, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. 24. Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to:

> [P]erform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can occasionally climb ramps or stairs, ladders, ropes or scaffolds and can occasionally balance, stoop, kneel, crouch or crawl. He should avoid concentrated exposure to extreme cold.

Tr. 25. The ALJ determined that Plaintiff was able to perform past relevant work as a User Support Analyst Supervisor (DOT[2] #032.132–010, SVP of 8, sedentary exertion but performed at light due to walking/standing reported) and User Support Analyst (DOT #032.262–010, SVP 7, sedentary exertion but performed at medium due to weight lifted). Tr. 29. Therefore, the ALJ concluded that Plaintiff was not disabled. Tr. 30.

### III.    <u>LEGAL STANDARD</u>

The scope of the Court's review is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the [ALJ] . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir.

---

[2] The "DOT" is the Dictionary of Occupational Titles. "The *Dictionary of Occupational Titles*, and its companion, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* . . . , are [SSA] resources that list occupations existing in the economy and explain some of the physical and mental requirements of those occupations. U.S. Dep't of Labor, *Dictionary of Occupational Titles* (4th ed. 1991); U.S. Dep't of Labor, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (1993)." *Pearson v. Colvin*, 810 F.3d 204, 211 n.1 (4th Cir. 2015).

1966). It is "more than a mere scintilla . . . and somewhat less than a preponderance." *Id.* In conducting the "substantial evidence" inquiry, my review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the evidence. *See, e.g.*, *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997); *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the [ALJ].").

## IV.     ANALYSIS

Plaintiff raises two arguments on appeal. First, Plaintiff contends that the ALJ erroneously assessed Plaintiff's RFC by (1) failing to set forth a narrative discussion supporting each RFC conclusion, (2) failing to perform a function-by-function assessment of Plaintiff's work-related abilities and Plaintiff's symptoms, and (3) failing to properly evaluate the opinion evidence of Dr. Kango. ECF 11, at 5–12. Second, Plaintiff argues that the ALJ failed to evaluate the Plaintiff's subjective complaints. ECF 11, at 13. Defendant first counters that the RFC is adequately defined, reflects Plaintiff's limitations, and allows for proper review by the Court. ECF 13, at 5. Second, Defendant argues that the ALJ performed a proper and well-supported analysis of Plaintiff's symptoms. ECF 11, at 10.

### A.     THE ALJ DID NOT ERRONEOUSLY ASSESS PLAINTIFF'S RFC.

The Court begins with Plaintiff's first overarching argument that the ALJ erroneously assessed Plaintiff's RFC. An RFC is an assessment that represents the most a claimant can still do despite any physical and mental limitations on a "regular and continuing basis." 20 C.F.R. § 416.945(b)–(c). In making this assessment, the ALJ "must consider all of the claimant's 'physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect [the claimant's] ability to work.'" *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (citing *Monroe v. Colvin*, 826 F.3d 176, 188 (4th Cir. 2016)); *see also* 20 C.F.R. § 416.945(a). An ALJ's RFC assessment must include an evaluation of the claimant's ability to perform the physical functions listed in 20 C.F.R. § 404.1545(b), including "sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions . . . [that] may reduce [a claimant's] ability to do past work and other work." 20 C.F.R. § 404.1545(b); SSR 96-8p, 1996 WL 374184, at *5 (S.S.A. July 2, 1996). "Only after such a function-by-function analysis may an ALJ express RFC in terms of the exertional levels of work." *Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 387 (4th Cir. 2021) (internal quotation marks omitted) (quoting *Monroe*, 826 F.3d at 179).

As noted in *Dowling*, "every conclusion reached by an ALJ when evaluating a claimant's RFC must be accompanied by 'a narrative discussion describing [ ] the evidence' that supports it." *Id.* (alteration in original) (citation omitted). Thus, "'a proper RFC analysis' proceeds in the following order: '(1) evidence, (2) logical explanation, and (3) conclusion.'" *Id.* at 388 (quoting *Thomas*, 916 F.3d at 311). "The second component, the ALJ's logical explanation, is just as important as the other two." *Thomas*, 916 F.3d at 311. However, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in [the] decision[.]" *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014) (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th

*Rodney M. v. Kijakazi*
Civil No. 23-0947-CDA
March 13, 2024
Page 4

Cir. 2005) (per curiam)).

> i. The ALJ's RFC Conclusion is Supported by Substantial Evidence, and Any Narrative Errors are Harmless.

First, Plaintiff alleges that the ALJ's RFC conclusion is not supported by substantial evidence. Plaintiff contends that the ALJ failed to cite "specific evidence that explained how [the ALJ] supported each of [Plaintiff's RFC] conclusions." ECF 11, at 7. The conclusions in question are that Plaintiff could "occasionally climb ramps or stairs, ladders, ropes or scaffolds and can occasionally balance, stoop, kneel, crouch or crawl . . . and should avoid concentrated exposure to extreme cold." Tr. 25. Contrary to Plaintiff's assertion, the ALJ included the exact evidence that Plaintiff cites to support his argument. ECF 11, at 7–8. In examining the record, the ALJ referenced the November 2018 MRI, (Tr. 26), that Plaintiff points to, (ECF 11, at 8), and the December 2018 MRI, (Tr. 27), as well as "repeated observations" of Plaintiff's stiffness, positive straight leg raising tests, and diminished sensation and reflexes (Tr. 27–29). The ALJ found Dr. N'Dama Bamba's ("Dr. Bamba") medical opinion to be persuasive, citing an examination that showed Plaintiff's "markedly stiff gait" and Plaintiff's ability to "stand frequently in an 8-hour workday," and that Plaintiff did "not require an assistive device to ambulate." Tr. 27.

The ALJ found Dr. Bamba's examination and interview with Plaintiff "consistent with the record . . . support[ing] the exertional limitations due to [Plaintiff's] back pain supported by imaging, findings of tenderness, abnormal gait, and reports of limited movement due to back pain." Tr. 27. The ALJ also explained that although Plaintiff's pain was relieved with physical therapy, he was "discharged from physical therapy . . . due to a lack of contact within 45 days"; Plaintiff's "primary care provider contacted [Plaintiff] three times . . . to try and schedule a visit for [Plaintiff's] chronic condition but was unsuccessful"; Plaintiff "[had] not been consistent with even doing conservative treatment of his pain"; and Plaintiff wanted to return to work, reporting his pain remained at a baseline level. Tr. 27–28. The ALJ assigned persuasive value to the medical consultants' opinions and accompanying medical documentation that Plaintiff could "perform light work with occasional climbing of ladders, ropes or scaffolds and frequent climbing of ramps and stairs, stopping, kneeling, crouching, and crawling." Tr. 28; *see Sizemore v. Berryhill*, 878 F.3d 72, 81 (4th Cir. 2017) (affirming the ALJ's decision when the ALJ assigned persuasive value to a medical opinion that "provide[s] substantial support for" the ALJ's RFC provisions).

Contrary to Plaintiff's insistence, the ALJ identified the evidence upon which she relied for her conclusion and "buil[t] an accurate and logical bridge" to it. *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018). Thus, this conclusion is supported by substantial evidence. With substantial evidence being present, whether such evidence *could* lead to a different conclusion is beyond the Court's review. *See, e.g.*, *Fiske v. Astrue*, 476 F. App'x 526, 527 (4th Cir. 2012) (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam)) ("This court does not reweigh evidence or make credibility determinations in evaluating whether a decision is supported by substantial evidence; '[w]here conflicting evidence allows reasonable minds to differ,' we defer to the Commissioner's decision.").

Nevertheless, Plaintiff is correct that the ALJ failed to explain how these limitations

adequately accounted for Plaintiff's limitations. *See Dowling*, 986 F. 3d at 387 (requiring narrative explanation of RFC limitations). This failure alone does not control the outcome, however. It remains Plaintiff's burden to articulate why this failure warrants remand. *See Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency determination."); *see also Smith v. Colvin*, No. TMD-15-1694, 2016 WL 5147195, at *10 (D. Md. 20, 2016) (finding harmless error where the claimant failed to demonstrate how the result would have changed had the ALJ properly addressed the claimant's cognitive difficulties in the RFC analysis); *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (finding that the applicant bears the burden of production and of proof during the first four steps of the inquiry). Plaintiff has not met this burden. He neither suggests how the RFC might have better accommodated his impairments nor identifies further evidence suggesting that any additional RFC limitation was appropriate. Thus, I find harmless the ALJ's failure to explain how the RFC limitations account for Plaintiff's impairments.

ii.     The ALJ Performed a Proper Function-by-Function Analysis.

Second, Plaintiff asserts that the ALJ failed to perform a function-by-function assessment of Plaintiff's work-related abilities and his symptoms. As an initial matter, the ALJ's failure to conduct a function-by-function analysis in this case does not warrant remand. The Fourth Circuit has rejected a *per se* rule requiring remand when the ALJ does not perform an explicit function-by-function analysis, finding it "inappropriate given that remand would prove futile in cases where the ALJ does not discuss functions that are 'irrelevant or uncontested.'" *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) (per curiam)). Remand is required only "where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Id*. (quoting *Cichocki*, 729 F.3d at 177).

Here, the ALJ reached several conclusions as to Plaintiff's exertional and non-exertional limitations in the RFC. Tr. 23–29. The ALJ summarized Plaintiff's testimony and medical record, citing extensively to the record that demonstrated how Plaintiff's impairments affected him. Tr. 23–29. The ALJ evaluated the medical opinions in the record under the proper regulatory framework. *Id.* More specifically, the ALJ assigned persuasive value to Dr. Bamba's opinion, finding it both consistent and supported, where Dr. Bamba found multiple exertional limitations that the ALJ included in her explanation. Tr. 27. Furthermore, the ALJ cited to multiple state medical consultants' records discussing the limitations set forth in the RFC. Tr. 28 (citing Ex. 1A, 2A, 5A, 6A). Thus, the ALJ provided substantial evidence to support her analysis in formulating Plaintiff's RFC.

In challenging the propriety of the ALJ's decision, Plaintiff again carries the burden of showing how Plaintiff's conditions affect his ability to perform work-related functions. *See infra* Section IV.A.i. Here, Plaintiff avers that the ALJ "never explained how she determined that the Plaintiff was capable of performing [the RFC]." ECF 11, at 9. Plaintiff also states that the RFC "fails to be supported" but does not articulate how the RFC may have changed had the ALJ performed the function-by-function RFC analysis that Plaintiff claims should have occurred.

ECF 11, at 9; *see Audlica D. v. Kijakazi*, No. BAH-22-1046, 2023 WL 1769665, at *5 (D. Md. Feb. 3, 2023) (finding harmless error where the claimant failed to show how the RFC may have changed if the ALJ performed a more in-depth function-by-function analysis). Plaintiff further asserts that the ALJ lacked a proper function-by-function analysis, making "no findings regarding [] Plaintiff's abilities to sit, stand, walk, or lift . . . ." ECF 11, at 11. On the contrary, the ALJ analyzed these specific functions on numerous occasions. *See* Tr. 25–28 (referring to Plaintiff's "observed walking"; adopting Dr. Bamba's assessment; adopting the medical consultants' opinions discussing Plaintiff's abilities).

It is unclear how, if at all, the alleged errors changed the outcome in Plaintiff's case. Accordingly, any failure by the ALJ to perform a function-by-function analysis, where, as here, there is no evidence that a more robust analysis would lead to a different result, constitutes harmless error. *Mascio*, 780 F.3d at 636; *see also Turner v. Colvin*, No. 13-0761, 2015 WL 502082, at *11 (M.D.N.C. Feb. 5, 2015), *report and recommendation adopted*, No. 13-0761, 2015 WL 12564210 (M.D.N.C. Mar. 6, 2015) ("Plaintiff has not made any attempt to show how a more complete analysis would have resulted in a more restrictive RFC or a different outcome in the case and, thus, such harmless error does not warrant remand."); *Brown v. Astrue*, No. JKS-09-1792, 2011 WL 129006, at *2 (D. Md. Jan. 14, 2011) ("Having identified no evidence to suggest that his obesity caused greater limitations than the ALJ assigned, [Plaintiff] has shown no basis for remand.").

      iii.      <u>The ALJ Properly Evaluated Dr. Kango's Opinion Evidence.</u>

Third, Plaintiff avers that the ALJ did not properly evaluate the opinion evidence of Dr. Kango. "For claims filed after March 27, 2017, an ALJ must follow certain procedures when assessing the weight to which medical opinions are entitled." *Adrianna S. v. Comm'r of Soc. Sec.*, No. SAG-20-3136, 2022 WL 112034, at *1 (D. Md. Jan. 12, 2022) (citing 20 C.F.R. §§ 404.1520c, 416.920c). An ALJ is required to "articulate . . . how persuasive [the ALJ] find[s] all of the medical opinions and all of the prior administrative medical findings in [a claimant's] case record." *Id.* (citing 20 C.F.R. §§ 404.1520c(b), 416.920c(b)). "Supportability and consistency are the most important factors when considering the persuasiveness of medical opinions." *Id.* (citing 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2)). Therefore, the ALJ is required to "explain how [the ALJ] considered the supportability and consistency factors for a medical source's medical opinions . . . in [the ALJ's] . . . decision." *Id.* "Supportability generally refers to 'the objective medical evidence and supporting explanations presented by a medical source.'" *Id.* (citing 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1)). Regarding consistency, the ALJ looks to the degree of consistency between the medical opinion and "the evidence from other medical sources and nonmedical sources in the claim." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

With respect to Dr. Kango's opinion, Plaintiff does not suggest that the ALJ disregarded any relevant factors under 20 C.F.R. §§ 404.1520c and 416.920c. Rather, Plaintiff argues that the ALJ "excluded [Dr. Kango's] positive examination findings, without explanation, [which] was erroneous." ECF 11, at 13. The Court disagrees. The ALJ examined Dr. Kango's statement, which attested to Plaintiff being a patient, and then correctly stated that Dr. Kango's determination

that "[plaintiff was] unable to work" was "an issue that is reserved for the Commissioner[.]" 20 C.F.R. §§ 404.1520b(c), 416.920b.  The ALJ then found Dr. Kango's opinions unpersuasive in that they were inconsistent with the rest of the record and only partially supported by treatment notes.[3]  *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2)).

Accordingly, for the reasons stated above, the ALJ properly evaluated Plaintiff's RFC; remand is not warranted on this ground.

### B. THE ALJ DID NOT FAIL TO EVALUATE PLAINTIFF'S SUBJECTIVE COMPLAINTS.

Plaintiff's final contention is that the ALJ failed to evaluate the Plaintiff's subjective complaints.  "When evaluating a claimant's subjective complaints, 'ALJs must use the two-step framework set forth in 20 C.F.R. § 404.1529 and SSR 16-3p.'" *Oakes v. Kijakazi*, 70 F.4th 207, 215 (4th Cir. 2023) (quoting *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 95 (4th Cir. 2020) (internal citation omitted).  "First, 'the ALJ must determine whether objective medical evidence presents a medically determinable impairment that could reasonably be expected to produce the claimant's alleged symptoms.'" *Id.*; 20 C.F.R. § 404.1529(b).  "Second, after finding a medically determinable impairment, 'the ALJ must assess the intensity and persistence of the alleged symptoms to determine how they affect the claimant's ability to work and whether the claimant is disabled.'" *Oakes*, 70 F.4th at 215; 20 C.F.R. § 404.1529(c)).  The second step does not require objective evidence.[4]  *Oakes*, 70 F.4th at 215.  Rather, the ALJ "must consider the entire case record, including the claimant's subjective statements about intensity, persistence, and limiting effects of symptoms—even if objective medical evidence does not substantiate them." *Id*.

The Fourth Circuit has "consistently held that 'while there must be objective medical evidence of some condition that could reasonably produce the pain, there need not be objective evidence of the pain itself or its intensity.'" *Arakas*, 983 F.3d at 95 (quoting *Walker v. Bowen*, 889 F.2d 47, 49 (4th Cir. 1989)).  "Rather, a claimant is 'entitled to rely exclusively on subjective evidence to prove the second part of the test.'" *Id*. (quoting *Hines v. Barnhart*, 453 F.3d 559, 565 (4th Cir. 2006)).  The ALJ applies incorrect legal standard "in discrediting complaints based on a lack of objective evidence corroborating them." *Oakes*, 70 F.4th at 215.  In *Arakas*, the Fourth Circuit found that the ALJ properly concluded that the claimant's "medically determinable

---

[3] The ALJ described Dr. Kango's opinions as "overall inconsistent with the record, which shows that the claimant is more afraid of the pain but is able to perform exertional and postural limitations more than alleged. This is supported by the claimant's consultative examination and findings from the hospital visit of normal range of motion, normal SLR tests, and a baseline gait (*See* 11F, 17F)." Tr. 29.

[4] "Objective" evidence is "medical evidence" that produces: (1) "anatomical, physiological, or psychological abnormalities established by medically acceptable clinical diagnostic techniques that can be observed apart from an individual's symptoms" or (2) "anatomical, physiological, or psychological phenomena, which can be shown by the use of medically acceptable laboratory diagnostic techniques."  SSR 16-3p, 2017 WL 5180304, at *3.

impairments 'could reasonably be expected to cause some of the alleged symptoms,' thus satisfying the first step of the symptom-evaluation framework." *Id*. at 96. "But at the second step, the ALJ improperly discredited [the claimant's] statements about the severity, persistence, and limited effects of her symptoms because [the ALJ] did not find them to be 'completely consistent with the objective evidence.'" *Id*. (internal citations omitted). "Because [the claimant] was 'entitled to rely exclusively on subjective evidence to prove' that her symptoms were 'so continuous and/or so severe that [they] prevent[ed] [her] from working a full eight hour day,' the ALJ 'applied an incorrect legal standard' in discrediting her complaints based on the lack of objective evidence corroborating them." *Id*. (alterations in original) (internal citations omitted). The Fourth Circuit concluded that the ALJ "'improperly increased [the claimant's] burden of proof' by effectively requiring her subjective descriptions of her symptoms to be supported by objective medical evidence." *Id*. (quoting *Lewis*, 858 F.3d at 866).

Here, a careful review of the ALJ's decision reveals that the ALJ properly assessed Plaintiff's subjective complaints. The ALJ first determined that Plaintiff's "[DDD] of the cervical spine; lumbar radiculopathy; and obesity" were severe. Tr. 23. The ALJ then proceeded to evaluate Plaintiff's symptoms and the extent to which they limit his capacity to work. Tr. 25–26. Contrary to Plaintiff's assertions, this process comported with 20 C.F.R. § 404.1529 and *Arakas*, as the ALJ did not require Plaintiff to produce "objective evidence" to corroborate subjective complaints of his pain. *Arakas*, 983 F.3d at 96. The ALJ noted Plaintiff's function report that delineated Plaintiff's difficulty with "lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, stair climbing, completing tasks, using his hands, getting along with others, and with memory and concentration." Tr. 25. The ALJ reviewed Plaintiff's reports that his "pain [was] like a pinched nerve waking him up from sleep," "[t]hat [Plaintiff] can walk one quarter of a mile but if his back is out then no more than 15 feet," and that he experienced "difficulty with personal care due to back pain." *Id.* The ALJ evaluated Plaintiff's testimony, provided at the hearing, that the "pain prevents [Plaintiff] from working." *Id.* The ALJ assessed Plaintiff's statements that "walking is a problem for him . . . at times." *Id.* The ALJ extensively cited to and assessed Plaintiff's subjective reports of pain throughout her decision. Tr. 22–29.

The ALJ then determined that although Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," his "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" Tr. 26. To support this determination, the ALJ noted that certain physical findings belied the allegedly limiting effects of Plaintiff's symptoms. For example, the ALJ noted that physical therapy "*eliminated*" Plaintiff's back pain but Plaintiff was discharged due to his lack of visits. Tr. 27 (emphasis added); 20 C.F.R. §§ 404.1529(c)(3)(iv)–(vi), 416.929(c)(3)(iv)–(vi) (noting that treatment, and thus, failure to pursue treatment, is a factor that the ALJ can use to evaluate the severity of a claimant's symptoms). The ALJ cited a consultative exam, during which Dr. Bamba noted that Plaintiff's "intense fear of experiencing pain [] may have impacted his perception of his condition." Tr. 26. The ALJ also noted that his primary care provider attempted to schedule Plaintiff three times to address his chronic back pain but was unsuccessful. Tr. 28.

*Rodney M. v. Kijakazi*
Civil No. 23-0947-CDA
March 13, 2024
Page 9

Indeed, the ALJ noted inconsistencies within Plaintiff's *own statements* undermined the limiting effects of his symptoms. For example, in February of 2019, Plaintiff "requested permission to return to work because his back pain was at baseline[.]" Tr. 28. Plaintiff also stated that "he does not take medication", but "pain medication, physical therapy, and injections have helped provide relief." Tr. 25, 27; *see* SSR 16-3p, 2016 WL 1119029, at *8 ("we will consider whether an individual follows prescribed treatment when evaluating the individual's ability to perform work activities; if the individual fails to follow prescribed treatment that might improve symptoms, we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record"); *Mickles v. Shalala*, 29 F.3d 918, 930 (4th Cir. 1994) (holding that inconsistency between a claimant's allegations about the severity of an impairment and the actual treatment sought is probative evidence of non-disability). The ALJ noted that Plaintiff reported that pain kept him from working but also reported that he went out at night, went to the casino, infrequently took pain medication, and completed limited housework. Tr. 25–26.

A careful reading of this analysis reveals that the ALJ merely weighed Plaintiff's subjective complaints against other record evidence. This remains permissible under *Arakas*. *See Audlica D.*, 2023 WL 1769665, at *3 (finding ALJ's analysis consistent with *Arakas* where it considered claimant's qualifying statements about pain and other evidence documenting improvement in symptoms). Moreover, *Arakas* holds that "ALJs may not rely on objective medical evidence (or the lack thereof) . . . to discount a claimant's subjective complaints regarding symptoms of . . . some disease *that does not produce such evidence*." *Arakas*, 983 F.3d at 97 (emphasis added). But Plaintiff does not suggest that his subjective complaints relate to a disease that fails to present objective evidence of its existence; multiple MRIs delineated bulging discs and other spinal disorders, informing the ALJ's decision to include multiple limitations in the RFC.[5] Tr. 25–29. The ALJ based her conclusion on Plaintiff's subjective complaints of pain and his own statements, including qualifying statements regarding the extent to which he can perform activities of daily living, and on objective medical evidence in the record. *See John O.*, 2022 WL 2305255, at *5.

Further, SSR 16-3p makes clear that "[a] report of . . . inconsistencies in the objective medical evidence is one of the many factors [that the SSA] must consider in evaluating the intensity, persistence, and limiting effects of an individual's symptoms." SSR 16-3p, 2017 WL 5180304, at *5 (Oct. 25, 2017). As such, the ALJ did not err in weighing Plaintiff's subjective complaints against the objective evidence in this case. For example, the ALJ found persuasive a "hospital visit that showed a normal range of motion, normal SLR tests, and a baseline gait." Tr. 28. Defendant correctly contends that "[u]nlike the claimant in *Arakas*, Plaintiff does not allege that he is disabled due to an impairment that has few objective findings; his primary alleged symptoms related to lower back pain for which objective medical evidence remains a relevant

---

[5] The ALJ's limitations in the RFC are "light work as defined in 20 CFR 404.1567(b) and 416.967(b) except [Plaintiff] can occasionally climb ramps or stairs, ladders, ropes or scaffolds and can occasionally balance, stoop, kneel, crouch or crawl. He should avoid concentrated exposure to extreme cold."

*Rodney M. v. Kijakazi*
Civil No. 23-0947-CDA
March 13, 2024
Page 10

factor."[6]  ECF 13, at 10; *see Audlica D.*, 2023 WL 1769665, at *3 (referring to *Arakas*, 983 F. 3d. at 96) (the ALJ did not require Plaintiff to produce "objective evidence" to corroborate subjective complaints of pain); *Hines v. Barnhart*, 453 F.3d 559, 564 (4th Cir. 2006) (delineating that "[o]bjective medical evidence of pain, its intensity, or degree . . . if available, should be obtained and considered.).  As such, remand is not warranted.

### V.     CONCLUSION

Pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is AFFIRMED.  The clerk is directed to CLOSE this case.  Despite the informal nature of this letter, it should be flagged as a Memorandum Opinion.  A separate implementing Order follows.

Sincerely,

/s/

Charles D. Austin
United States Magistrate Judge

---

[6] For example, the ALJ considered multiple inconsistencies in the objective medical evidence regarding Plaintiff's back imaging.  In July 2018, Plaintiff presented to the hospital with complaints of pain in his lower back due to a fall.  Tr. 26.  Imaging of Plaintiff's lumbar spine yielded no evidence of compression fracture or lesion, while showing that Plaintiff had normal alignment.  Tr. 25.  In December of 2018, MRI revealed mild spondylotic changes within his lumbar spine.  Tr. 26.